UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ELIZABETH P.,

                  Plaintiff,

       v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

**DECISION AND ORDER**

1:23-CV-00652 EAW

## <u>INTRODUCTION</u>

Represented by counsel, Plaintiff Elizabeth P. ("Plaintiff") brings this action pursuant to Title II of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for disability insurance benefits ("DIB"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 9; Dkt. 15), and Plaintiff's reply (Dkt. 16). For the reasons discussed below, the Commissioner's motion (Dkt. 15) is granted, and Plaintiff's motion (Dkt. 9) is denied.

## BACKGROUND

Plaintiff protectively filed her application for DIB on January 21, 2016.  (Dkt. 7 at 201; Dkt. 5 at 160-161).[1]  In her application, Plaintiff alleged disability beginning on December 20, 2015.  (Dkt. 7 at 201; Dkt. 5 at 160).  Plaintiff's application was initially denied on July 7, 2016.  (Dkt. 7 at 201; Dkt. 5 at 92).   A hearing was held before administrative law judge ("ALJ") Barry Best on April 23, 2019.  (Dkt. 7 at 201; Dkt. 5 at 53-80).  On May 28, 2019, ALJ Best issued an unfavorable decision.  (Dkt. 5 at 23-38).  Plaintiff requested Appeals Council review; her request was denied on June 16, 2020, making the ALJ's determination the Commissioner's final decision.  (*Id.* at 8-13).  Plaintiff appealed the decision to the United States District Court for the Western District of New York, and on December 16, 2021, by agreement of the parties, the Court remanded Plaintiff's claim to the Commissioner for further administrative proceedings.  (Dkt. 7 at 201; Dkt. 5 at 366-68).

On June 4, 2022, the Appeals Council issued an order of remand.  (Dkt. 7 at 201; Dkt. 5 at 369-73).  ALJ Jason Mastrangelo held a telephone hearing on January 18, 2023.  (Dkt. 7 at 202, 234-86).  On March 9, 2023, the ALJ issued an unfavorable decision.  (*Id.* at 201-25).  This action followed.

---

[1]     When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

## LEGAL STANDARD

### I.      District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted).  It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).  However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

### II.     Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986).  At step one, the ALJ determines whether the claimant is engaged in

substantial gainful work activity.  *See* 20 C.F.R. § 404.1520(b).  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities.  *Id*. § 404.1520(c).  If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled."  If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings").  *Id*. § 404.1520(d).  If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id*. § 404.1509, the claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments.  *See id*. § 404.1520(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work.  *Id*. § 404.1520(f).  If the claimant can perform such requirements, then he or she is not disabled.  If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled.  *Id*. § 404.1520(g).  To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and

work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I.    The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520. Initially, the ALJ determined that Plaintiff last met the insured status requirements of the Act on December 31, 2020. (Dkt. 7 at 205). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity during the period from December 20, 2015, the alleged onset date, through her date last insured of December 31, 2020. (*Id.*).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of: arthritis, chronic pain/fibromyalgia, and asthma. (*Id.*). The ALJ further found that Plaintiff's medically determinable impairments of obesity, hypertension, diabetes, colitis/irritable bowel syndrome, dysphagia, migraine, sciatica, anxiety disorder, and depressive disorder were non-severe. (*Id.* at 205).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.* at 211). The ALJ particularly considered the criteria of Listings 1.15, 1.18, 3.03, and Plaintiff's obesity in reaching his conclusion. (*Id.* at 212).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) and sit, stand, or walk 6 hours each in an 8 hour day, except that Plaintiff "can perform occasional bending and kneeling,

but she must avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation." (*Id.* at 212).

At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (*Id.* at 223). At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of merchandise marker, routing clerk, and fitting room attendant. (*Id.* at 224). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.*).

## II.    **The Commissioner's Determination is Supported by Substantial Evidence and Free from Legal Error**

Plaintiff asks the Court to reverse or, in the alternative, to remand this matter to the Commissioner, arguing that the ALJ: (1) failed to properly evaluate Plaintiff's migraines, degenerative disc disease of the lumbar spine, and mental impairments at step two and subsequent steps in the analysis; (2) improperly determined the RFC based on his own lay interpretation; and (3) failed to obtain missing mental health records. The Court has considered each of Plaintiff's arguments and, for the reasons discussed below, finds that they are without merit and that the Commissioner's decision is supported by substantial evidence.

### A.    **Severity Determination**

Plaintiff argues that the ALJ erred at step two by failing to find Plaintiff's migraines, degenerative disc disease of the lumbar spine, and depression and anxiety to be severe

impairments, or to incorporate limitations arising from those impairments into the RFC. The Court disagrees.

As a threshold matter, Plaintiff argues that a finding in the prior ALJ's decision that degenerative disc disease of the lumbar spine, migraines, and anxiety disorder were severe impairments constituted a "rule of mandate" requiring the ALJ to make the same findings in this decision.  (*See* Dkt. 9-1 ("The ALJ's independent decision to reevaluate Plaintiff's impairments at step two and leave out several of the impairments that the prior ALJ deemed to be severe was clearly against the spirit of the Appeals Council's remand order, and remand on this basis is warranted.")).  This argument is meritless.  The Appeals Council vacated the earlier decision and remanded the case to ALJ Mastrangelo.  (Dkt. 7 at 371).  Nothing in the Appeals Council remand order can be construed to require ALJ Mastrangelo to make any of the same findings as the prior decision and therefore, he was free to make findings that differed from those in the earlier decision.  *See Cianfano v. Kijakazi*, No. 22CV4801(MKV)(RWL), 2023 WL 6455758, at *20 (S.D.N.Y. Aug. 24, 2023) ("As directed by the Appeals Council, the ALJ undertook a de novo review, and did so on a supplemented record.  That ALJ Singh came to a different conclusion with respect to the earlier period is of no moment."), *report and recommendation adopted*, 2023 WL 5950687 (S.D.N.Y. Sept. 12, 2023); *Brouillette v. Comm'r of Soc. Sec.*, No. 614CV1305 (GTS/WBC), 2016 WL 11477429, at *6 (N.D.N.Y. Jan. 5, 2016) ("As Defendant properly asserts, the [Appeals Council] vacated the 2010 decision, therefore, the ALJ was not required to adhere to his previous decision."), *report and recommendation adopted*, 2016 WL 356040 (N.D.N.Y. Jan. 29, 2016); *Gittens v. Astrue*, No. 12 CIV. 3224 NSR GAY,

2013 WL 4535213, at *8 (S.D.N.Y. Aug. 26, 2013) ("[T]he Appeals Council vacated the previous decisions prior to the remand.  As such, ALJ Lemoine's previous decisions had no bearing on the proceedings before ALJ Edgell. . . .  Furthermore, without an express directive to adhere to the previous ALJ's determinations on steps one through four, ALJ Edgell was free to review the entire case record *de novo* and to reach her own conclusions."); *Uffre v. Astrue*, No. 06 Civ. 7755, 2008 WL 1792436, at *7 (S.D.N.Y. Apr. 18, 2008) ("Here, the Appeals Council vacated the ALJ's first decision. . . .  Thus, the first decision has no bearing on these proceedings." (citation omitted)).

Independent of her argument regarding the preclusive effect of the prior decision, Plaintiff contends that the ALJ failed to support with substantial evidence his step two findings as to her migraines, degenerative disc disease, and depression and anxiety.  The Court also disagrees with this argument.

At step two, "[a]n impairment is 'severe' if it 'significantly limits [the claimant's] physical or mental ability to do basic work activities.'"  *Eralte v. Colvin*, No. 14 Civ. 1745(JCF), 2014 WL 7330441, at *10 (S.D.N.Y. Dec. 23, 2014) (quoting 20 C.F.R. § 404.1520(c)).  "The claimant bears the burden of presenting evidence establishing severity." *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012) (citations omitted). "[T]he severity prong is intended as a *de minimis* standard to screen out only those claimants with 'slight' limitations that 'do not significantly limit any basic work activity.'" *Vicari v. Astrue*, No. 1:05-cv-4967-ENV-VVP, 2009 WL 331242, at *3 (E.D.N.Y. Feb. 10, 2009) (quoting *Bowen v. Yuckert*, 482 U.S. 137, 158 (1987)); *see also Melendez v. Comm'r of Soc. Sec.*, No. 17-CV-299-FPG, 2020 WL 4274510, at *2 (W.D.N.Y. July 24, 2020) ("In

other words, the analysis at step two is a threshold test designed to screen out *de minimis* or totally groundless claims." (quotations and citations omitted)); *Cooper v. Berryhill*, No. 17-CV-6782-JWF, 2019 WL 1233686, at *1 (W.D.N.Y. Mar. 15, 2019) ("Although plaintiff bears the burden of proof at step two, it is not a heavy burden.").

"When the parties disagree over the effect of the ALJ's failure to include a condition at step two, resolution of this issue comes down to a question of whether there was substantial evidence to support the ALJ's conclusion that [the omitted condition] should not be included as a severe impairment." *Eralte,* 2014 WL 7330441, at *10 (quotation and citation omitted); *see also Cwiklinski v. Comm'r of Soc. Sec.*, No. 18-CV-1204-FPG, 2020 WL 1131223, at *3 (W.D.N.Y. Mar. 9, 2020) ("Where a claimant produces some evidence of an impairment, the Commissioner may conclude that the impairment is non-severe only where the medical evidence 'establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work.'" (quoting SSR 85-28, 1985 WL 56856, at *3 (1985))).  However, "any error at step two is rendered harmless when the ALJ finds that a claimant has other severe impairments and proceeds through the later steps of the sequential analysis." *Herman S. v. Comm'r of Soc. Sec.*, 577 F. Supp. 3d 190, 197 (W.D.N.Y. 2022); *see also Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (finding any step two error harmless where ALJ considered the impairments at subsequent steps); *Roane v. O'Malley*, No. 22 CIV. 10704 (AEK), 2024 WL 1357845, at *5 (S.D.N.Y. Mar. 29, 2024) ("Specifically, '[w]hen an [ALJ] identifies some severe impairments at step two, and then proceeds through the sequential evaluation on the basis of the combined effects of all impairments, including

those erroneously found to be non-severe, an error in failing to identify all severe impairments at step two is harmless.'" (quoting *Girao v. Kijakazi*, No. 22-cv-1419 (JLC), 2023 WL 5312064, at *13 (S.D.N.Y. 2023))).

### 1. Step Two Determination

In finding Plaintiff's migraines to be non-severe, the ALJ identified treatment records reflecting Plaintiff's reports of migraine headaches associated with symptoms of nausea, light and noise sensitivity, and dizziness, for which she was prescribed medication. (Dkt. 7 at 206-07).   The ALJ noted that the last record reflecting any complaints of migraines was in neurology notes dated March 2018.  (*Id.* at 207).  The ALJ explained his conclusion that the absence of treatment supported a finding of non-severity:

> Thereafter, there is little neurology follow-up or ongoing headache evaluation.  There is no indication that [Plaintiff] maintained a headache log or that any further intervention was recommended.  In the absence of any subsequent medical records showing complaints of or treatment for migraine related symptoms, it is reasonable to conclude that this impairment has not resulted in more than minimal limitations on [Plaintiff's] ability to do basic work activities and is a non-severe impairment.

(*Id.*).  A lack of continued treatment was an appropriate consideration for the ALJ in assessing the limitation's severity.  *See Susan B. v. Comm'r of Soc. Sec.*, 515 F. Supp. 3d 225, 235 (D. Vt. 2021) (finding that lack of consistent treatment supported conclusion of non-severity); *Windom v. Berryhill*, No. 6:17-cv-06720-MAT, 2018 WL 4960491, at *3 (W.D.N.Y. Oct. 14, 2018) (holding that ALJ properly found Plaintiff's physical conditions

non-severe where they were controlled or minimally treated).  The Court finds no error in the ALJ's determination of the severity of Plaintiff's migraines.

Similarly, as required by the regulations, in finding Plaintiff's depression and anxiety to be non-severe, the ALJ assessed the four broad functional areas of mental functioning, or "Paragraph B" criteria: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself.  20 C.F.R. § 404.1520a(c)(4).  The ALJ is required to assess the degree of any limitations in each of these areas by characterizing them as "none," "mild," "moderate," "marked," and "extreme."  If the ALJ rates the degree of limitation as "none" or "mild," the ALJ "will generally conclude that [the] impairment[] is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities."   20 C.F.R. § 404.1520a(d)(1).

Here, the ALJ concluded that Plaintiff had mild limitations in understanding, remembering, or applying information; mild limitations in interacting with others; mild limitations in concentrating, persisting, or maintaining pace; and mild limitations in adapting or managing oneself.  (Dkt. 7 at 210-11)  He concluded that because none of Plaintiff's mental impairments caused more than a "mild" limitation in any functional area, and the evidence does not otherwise indicate that there is more than a minimal limitation in her ability to do basic work activities, the impairments were non-severe.  (*Id.* at 211).  The ALJ acknowledged that the step two assessment was distinct from the analysis required at later steps.  (*Id.* ("The limitations identified in the 'paragraph B' criteria are not a residual

functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process.  The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment.  The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.")).

In further support of his determination on the severity of Plaintiff's mental impairments at step two, the ALJ considered the fact that Plaintiff's history of anxiety and depression were generally effectively managed with medication and therapy and that the record documented no hospitalizations.  (*Id.* at 210).  He noted that Plaintiff's treatment records reflect benign mental status examinations and there is no indication in the medical evidence that the symptoms from these impairments were of such duration and intensity to more than minimally interfere with her ability to perform work activities.  (*Id.*).  He also considered the opinion of the impartial medical consultant who reached the same conclusion.  (*Id.*).  These considerations were proper and provide substantial evidence for the ALJ's conclusions.  *See Apr. W. v. Kijakazi*, No. 3:22CV841(AWT), 2024 WL 1327313, at *16 (D. Conn. Mar. 28, 2024) (holding that record supported ALJ's finding that mental impairments were non-severe "the ALJ clearly articulated specific and reviewable reasons for finding no mental impairment other than a mild limitation in

understanding, remembering or applying information and in concentrating, persisting or maintaining pace").

As to Plaintiff's degenerative disc disease, Plaintiff is correct that the ALJ did not expressly address this impairment in his severity analysis. Rather, he addressed Plaintiff's sciatica and in connection with that analysis, noted Plaintiff's history of lower back pain and tenderness to the lumbar spine. (Dkt. 7 at 207). The ALJ rejected sciatica as a severe impairment since treatment records showed mild, unremarkable findings and no documentation of specific evaluations or treatment for sciatica prior to Plaintiff's date last insured. (*Id.* at 207). Although the ALJ's sciatica analysis arguably addresses some of the same limitations as degenerative disc disease, the Court agrees that Plaintiff's degenerative disc disease was not clearly assessed by the ALJ for severity. But as explained further herein, even if this constituted error, any such error arising from this omission is harmless.

## 2. Consideration of Non-Severe Impairments at Subsequent Steps

As noted, even if the Court agreed that the ALJ erred in his severity determination, any such error is harmless if the ALJ continues on to consider the non-severe impairments at the subsequent steps of the analysis. *See Guerra v. Comm'r of Soc. Sec.*, No. 1:16-CV-00991 (MAT), 2018 WL 3751292, at *3 (W.D.N.Y. Aug. 7, 2018) ("Moreover, '[c]ourts have developed a specialized variant of harmless-error analysis with respect to Step 2 severity errors in social security proceedings. . . . [W]hen an administrative law judge identifies some severe impairments at Step 2, and then proceeds through [the] sequential evaluation on the basis of [the] combined effects of all impairments, including those erroneously found to be non severe, an error in failing to identify all severe impairments at

Step 2 is harmless.'" (quoting *Snyder v. Colvin*, No. 5:13-CV-585 GLS/ESH, 2014 WL 3107962, at *5 (N.D.N.Y. July 8, 2014)), *aff'd*, 778 F. App'x 75 (2d Cir. 2019); *see also Grant v. Saul*, No. 3:18-CV-00261 (KAD), 2020 WL 1307106, at *6 (D. Conn. Mar. 18, 2020) (explaining that an ALJ is required to consider non-severe impairments when fashioning the RFC.  It is only where there is "no discernible basis for the court to conclude that [the] ALJ . . . factored [the non-severe impairments] . . . into her ultimate residual functional capacity determination," that the error is not harmless.  *Snyder v. Colvin*, No. 5:13-CV-585 GLS/ESH, 2014 WL 3107962, at *5 (N.D.N.Y. July 8, 2014).

Here, Plaintiff acknowledges that "the ALJ included a discussion of Plaintiff's headaches, low back pain, and mental impairments in subsequent steps," but contends that "he failed to demonstrate that he properly accounted for the impairments in the RFC finding." (Dkt. 9-1 at 27).  The Court disagrees.

As to Plaintiff's back impairment, the ALJ discussed Plaintiff's medical records and medical opinion evidence relating to this condition, including her essentially normal MRI results and EMG study which revealed no lumbar radiculopathy.  But notwithstanding the fact that degenerative disc disease was not deemed severe, the ALJ expressly accounted for Plaintiff's lower back pain in the RFC he determined for Plaintiff. (Dkt. 7 at 220 ("The residual functional capacity above adequately accounts for any pain related symptoms stemming from the claimant's lumbar and cervical spine disorders, knee complaints,

fibromyalgia, and arthritis as well as the effect of obesity on her conditions.")). Accordingly, any error as to the severity determination for this condition was harmless.

With respect to Plaintiff's migraines and her anxiety and depression, it is true that the RFC does not contain any limitations addressed to these impairments.  "But the law only requires the ALJ to *evaluate* non-severe impairments in the RFC analysis, not to include limitations in the RFC. . . .  To hold otherwise would defy logic: *requiring* an ALJ to limit a claimant's ability to work due to a non-severe impairment suggests that the non-severe impairment causes significant work limitations, which runs counter to the non-severity finding."  *Catherine Jean D. v. Comm'r of Soc. Sec.*, No. 20-CV-1581-FPG, 2022 WL 4115367, at *3 (W.D.N.Y. Sept. 9, 2022) (citation omitted); *see also Christian H. v. Comm'r of Soc. Sec.*, No. 20-CV-1490MWP, 2022 WL 3648022, at *4 (W.D.N.Y. Aug. 24, 2022) ("Although an ALJ must account for limitations caused by both severe and nonsevere impairments in formulating the RFC, . . . if a mental impairment causes only mild limitations that do not result in any functional work-related restrictions, the ALJ does not err by formulating an RFC without mental limitations or restrictions.") (citation omitted)); *Maura B. C. v. Comm'r of Soc. Sec.*, No. 5:21-CV-0294 (DEP), 2022 WL 2789102, at *6 (N.D.N.Y. July 15, 2022) ("'While the analysis at steps two and three concerns the functional effects of mental impairments, the RFC analysis at step four specifically considers *work-related* physical and mental activities in a *work setting*,' such

that 'a finding at steps two or three does not automatically translate to an identical finding at step four.'" (quoting *Wells v. Colvin*, 87 F. Supp. 3d 421, 436 (W.D.N.Y. 2015))).

Here, the ALJ thoroughly considered Plaintiff's medical records containing information about her migraines and mental impairments in deciding that they did not impose work-related limitations.  The ALJ also addressed the medical opinion evidence which evaluated these impairments and explained his reasoning for the weight given to those opinions.  For example, medical expert Richard Buitrago, Psy.D., opined that Plaintiff's mental impairments did not impose any limitations that would not interfere with her ability to work full-time.  The ALJ gave this opinion substantial weight, articulated his reasons for doing so, and relied on Dr. Buitrago's opinion in making the RFC determination.  Similarly, as explained in more detail herein, the ALJ explained his reasons for not giving greater weight to the opinion of Plaintiff's primary care provider, Alexander Corbett, M.D., which addressed Plaintiff's headaches.  This was consistent with the ALJ's determination not to include any limitations in the RFC specifically related to this impairment.

Overall, the objections raised by Plaintiff as to the sufficiency of the ALJ's severity determination amount to her disagreement with how the ALJ considered and resolved conflicting evidence in the record, which does not warrant remand.  *See Kelinne O. o/b/o K.P.Q. v. Comm'r of Soc*. Sec., No. 523CV00812 (BKS/ML), 2024 WL 2027907, at *6 (N.D.N.Y. Apr. 16, 2024) ("To the extent that Plaintiff's arguments amount to no more than a disagreement with the ALJ's conclusions, this cannot serve as an appropriate basis

to disturb the ALJ's decision."), *report and recommendation adopted*, 2024 WL 2023395 (N.D.N.Y. May 6, 2024).

### B.   Lay Opinion

The Court turns to Plaintiff's argument that the ALJ relied on lay opinion evidence in assessing the RFC.  Specifically, Plaintiff argues that the ALJ discounted the opinions of Plaintiff's primary care provider, Dr. Corbett, and consultative examiner, Hongibao Liu, M.D., relating to her physical abilities, and instead relied on his own lay opinion in reaching an RFC finding.  (Dkt. 9-1 at 30).

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole."  *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).  An ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision."  *Id.* However, an ALJ is not a medical professional, and "is not qualified to assess a claimant's RFC on the basis of bare medical findings."  *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (quotation omitted).  In other words, "[a]n ALJ is prohibited from 'playing doctor' in the sense that an ALJ may not substitute his own judgment for competent medical opinion. . . ."  *Quinto v. Berryhill*, No. 3:17-cv-00024 (JCH), 2017 WL 6017931, at *12 (D. Conn. Dec. 1, 2017) (quotations and citations omitted).

Because Plaintiff's claim was filed before March 27, 2017, the ALJ was required to apply the treating physician rule, under which a treating physician's opinion is entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence

in [the] case record[.]" 20 C.F.R. § 404.1527(c)(2). Under the treating physician rule, if

the ALJ declines to afford controlling weight to a treating physician's medical opinion, he

or she "must consider various factors to determine how much weight to give to the

opinion." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (internal quotation marks

omitted). These factors include:

> (i) the frequency of examination and the length, nature and extent of the
> treatment relationship; (ii) the evidence in support of the treating physician's
> opinion; (iii) the consistency of the opinion with the record as a whole;
> (iv) whether the opinion is from a specialist; and (v) other factors brought to
> the Social Security Administration's attention that tend to support or
> contradict the opinion.

*Id*.

Whatever weight the ALJ assigns to the treating physician's opinion, he must "give

good reasons in his notice of determination or decision for the weight [he gives to the]

treating source's medical opinion." 20 C.F.R. § 404.1527(c)(2); *see also Harris v. Colvin*,

149 F. Supp. 3d 435, 441 (W.D.N.Y. 2016) ("A corollary to the treating physician rule is

the so-called 'good reasons rule,' which is based on the regulations specifying that 'the

Commissioner "will always give good reasons"' for the weight given to a treating source

opinion." (quoting *Halloran*, 362 F.3d at 32)). "Those good reasons must be supported by

the evidence in the case record, and must be sufficiently specific . . . ." *Harris*, 149 F.

Supp. 3d at 441 (internal quotation marks omitted). The Second Circuit "[does] not hesitate

to remand when the Commissioner's decision has not provided 'good reasons' for the

weight given to a [treating physician's] opinion and [it] will continue remanding when [it]

encounter[s] opinions from [ALJs] that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion." *Halloran*, 362 F.3d at 33.

Dr. Corbett provided multiple opinions.  In an August 10, 2018 employability assessment, Dr. Corbett opined that Plaintiff was very limited in walking, standing, lifting, carrying, pushing, pulling, bending, and using stairs or other climbing.  (Dkt. 5 at 746-47). He opined that she cannot work due to chronic pain, mental health challenges, and fibromyalgia.  (*Id.* at 746).  On November 29, 2018, he completed a treating medical source statement.  (Dkt. 6 at 136-41).  He again opined that Plaintiff cannot engage in full-time competitive employment on a sustained basis due to chronic back pain, concentration issues, and mental health challenges.  (*Id.* at 136).  Dr. Corbett indicated that Plaintiff could sit for 30 minutes at a time before needing to get up and stand for 10 minutes at a time, and would need to lay down and elevate her legs and stretch to relieve pain.  (*Id.* at 139).  Dr. Corbett stated that Plaintiff could rarely lift less than 10 pounds and could never climb ladders.  (*Id.* at 139-40).  He estimated that she would be off-task more than 30% of an 8-hour workday and would be absent from work more than four days each month as a result of her impairments.  (*Id.* at 140).

The ALJ explained the weight given to Dr. Corbett's opinions as follows:

The undersigned acknowledges that Dr. Corbett is [Plaintiff's] longstanding primary care physician since March 2016 and saw her for regular follow-up at 2-3 month intervals and as such his opinions were considered very carefully; however, his opinion is given little weight as it is inconsistent with the objective findings in the contemporaneous treatment notes and the record as a whole.  First, any statement concluding [Plaintiff] is disabled is given no weight, as this statement pertains to issues reserved to the Commissioner. Secondly, the August 2018 questionnaire is given little weight as it indicates general categories of moderately to very limited, but does not contain a specific function-by function assessment furthering identifying the degree of

limitation in vocationally relevant terms.  Third, the statements and opinions of Dr. Corbett are given less weight to the extent they assert greater limitations than suggested by the contemporaneous medical evidence and the record as a whole.  Dr. Corbett opines that [Plaintiff] would have a less than sedentary residual functional capacity, have severely impaired attention and concentration, and was bedbound for half the day at least once a week.  The undersigned finds that these opinions are wholly inconsistent with the overall evidence, including the consistently benign mental status examinations with intact concentration and memory, physical examinations demonstrating no significant motor, strength, or neurological deficits, [Plaintiff's] routine and conservative treatment history, and her reported activities such as painting her brother's office and caring for her niece and nephew all day on the weekends for several years.  Further, Dr. Corbett indicated that medication side effects would also negatively impact [Plaintiff's] ability to maintain attention and concentration; however, during pain management visits, [Plaintiff] consistently denied side effects.  Furthermore, there is no indication of disabling exacerbations due to mental impairments and associated limitations lasting several weeks in mental health treatment notes or in medication management notes with Dr. Corbett.  [Plaintiff] was noted to be defensive and confrontational only when her narcotic pain medication was being weaned with no such behavior noted on other mental status examinations at other points in the record.  For all of these reasons, the undersigned affords no weight to Dr. Corbett's opinions.

(Dkt. 7 at 221-22).

Dr. Liu conducted a consultative examination of Plaintiff on June 29, 2016.  (Dkt. 5 at 402-06).  He noted that Plaintiff appeared to be in no acute distress and had a normal gait, but could walk on heels and toes with moderate difficulty due to lower back pain.  (*Id.* at 404).  Dr. Liu opined that Plaintiff "has mild to moderate limitation for prolonged walking, bending, and kneeling," and "should avoid dust or other irritating factors to limit asthma attacks."  (*Id.* at 405).  The ALJ described his assessment of Dr. Liu's opinions as follows:

However, the undersigned notes that while Dr. Liu was specific in detailing environmental restrictions that should be avoided due to the history of asthma, he did not further define the term "moderate to mild limitation" in vocationally relevant terms.  The undersigned notes that although subsequent

evidence shows that [Plaintiff] underwent right shoulder surgery, the record demonstrates continued conservative management of [Plaintiff's] pain related impairments with improvement with medication.   Further, the evidence at the hearing level, including physical examinations since the 2016 consultative examination, shows consistently stable gait, intact motor strength, and no acute neurological deficits.

. . .

Overall, the opinion of Dr. Liu taken together with the exam showing some difficulty in fully squatting and diminished lumbar range of motion and other records showing the objective findings consistent with normal gait, motor strength, and sensation outlined above is persuasive and given some weight to the extent it can be reasonably read as saying that [Plaintiff] would be precluded from rigors of medium work, or certain frequent postural activities of bending and kneeling, and instead could engage in a range of light work consistent with the above residual functional capacity.

(Dkt. 7 at 220).

As is evident, the ALJ articulated his reasoning for the weight accorded to the opinions of Dr. Corbett and Dr. Liu, and the Court concludes those reasons are sound. Contrary to Plaintiff's suggestion, the fact that the ALJ did not accept one medical opinion in its entirely is not evidence that he relied on his own lay opinion in reaching his conclusions, as it is "'within the province of the ALJ' to rely on certain portions of a medical opinion that are supported by substantial evidence and reject portions that are inconsistent or contrary to the record." *Orlando A. v. Comm'r of Soc. Sec.*, No. 21-CV-339, 2023 WL 5344934, at *4 (W.D.N.Y. Aug. 21, 2023) (quoting *Veino v. Barnhart*, 312 F.3d 578, 588 (2d. Cir. 2002)).   Moreover, contrary to Plaintiff's contentions, it is clear that the ALJ did not wholly reject Dr. Liu's opinions relating to prolonged walking, bending, and kneeling but rather, gave some weight to that determination, which was consistent with Plaintiff's RFC. *See Lewis v. Colvin*, 548 F. App'x 675, 677 (2d Cir. 2013) (finding that "the ALJ's determination that Lewis could perform 'light work' is supported

by Dr. Datta's assessment of 'mild limitations for prolonged sitting, standing, and walking'")

Further, in addition to the medical opinion evidence, the ALJ considered Plaintiff's reports that her symptoms were controlled with medication, her benign exam findings, and Plaintiff's activities of daily living in formulating the RFC.  While Plaintiff may disagree with the ALJ's consideration of the medical evidence of record, that does not mean that the ALJ was relying on his own lay opinion in assessing Plaintiff's RFC or that the RFC finding is not supported by substantial evidence.  For these reasons, the Court rejects Plaintiff's challenge to the RFC determination on this basis.

## C.    Development of the Record

Finally, Plaintiff contends that the ALJ's decision was based on an incomplete record.  Plaintiff argues that at the hearing Dr. Buitrago indicated that he reviewed only seven mental health records but that the record suggested there may have been 60 individual sessions. (Dkt. 7 at 242-43).  Plaintiff argues that the ALJ's failure to obtain additional mental health records warrants remand.

"Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996).  Specifically, the ALJ must "investigate and develop the facts and develop the arguments both for and against the granting of benefits." *Vincent v. Comm'r of Soc. Sec.*, 651 F.3d 299, 305 (2d Cir. 2011).  "The ALJ must 'make every reasonable effort' to help the claimant get medical reports from his or her medical sources as long as the claimant has permitted the ALJ to do so." *Sotososa v. Colvin*, No. 15-CV-

854-FPG, 2016 WL 6517788, at *3 (W.D.N.Y. Nov. 3, 2016) (quoting *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996)).  However, the ALJ's duty to develop the record is not limitless.  "[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information. . . ."  *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (internal quotation marks and citation omitted).

At the hearing, the ALJ inquired of Plaintiff's counsel as to the existence of any additional counseling records.  Plaintiff's attorney reported his belief that the bulk of mental health treatment Plaintiff received was by her primary care provider.  (Dkt. 7 at 244).  At the end of the hearing, the ALJ left the record open for the submission of any additional evidence.  (*Id.* at 285).  Following the hearing, on January 20, 2023, Plaintiff's counsel wrote a letter to the ALJ stating, "This letter is to inform you that all requested records concerning [Plaintiff] have been submitted and you may proceed to a decision on this case.  Thank you for allowing me the extra time to submit the additional record."  (*Id.* at 539).  The only additional records submitted by counsel were from a pain treatment center.  (*Id.* at 1202).  It was therefore reasonable for the ALJ to conclude that there were no additional records outstanding.  *Gregory B. v. Comm'r of Soc. Sec.*, No. 7:23-CV-01011-GRJ, 2024 WL 2304689, at *7 (S.D.N.Y. May 17, 2024) ("When asked at the administrative hearing whether the record was complete, Plaintiff's counsel identified outstanding reports from Dr. Bernstein and Dr. Warren, and the ALJ agreed to hold the record open to allow counsel time to obtain the documents and supplement the record. . . . Counsel stated that the record was otherwise complete. . . . In February of 2022, counsel

submitted the records and confirmed that no further records were outstanding. . . .  Based on the foregoing, the Court has no trouble concluding that the ALJ satisfied his duty to develop the record." (citations omitted)).

Moreover, there was ample evidence in the record for the ALJ to rely upon in making his assessment, including medical opinions from multiple sources, and voluminous treatment records.  Under these circumstances, the Court does not find that there was a gap in the record or that the ALJ failed to satisfy his duty.  In sum, the Court finds no basis for reversal or remand based on the ALJ's development of the record.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 15) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 9) is denied.  The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: June 3, 2024
        Rochester, New York